IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LEBERT VANDERPOOL,<br>6350 Bucketts Lane<br>Elkridge, Maryland 21075<br>Howard County<br><br>    Plaintiff,<br><br>v.<br><br>AMALGAMATED TRANSIT UNION,<br>LOCAL 1764,<br>9701 Apollo Drive, Suite 330<br>Largo, Maryland  20774<br>Prince George's County<br><br>    Defendant. | Case No. _____ |

## COMPLAINT

Plaintiff, Lebert Vanderpool ("Mr. Vanderpool"), files this complaint against Defendant Amalgamated Transit Union, Local 1764 (the "Union") for breaching its duty of fair representation. In support therefore, Mr. Vanderpool states as follows.

PARTIES, JURISDICTION, AND VENUE

1. Mr. Vanderpool is a resident of the state of Maryland.

2. Upon information and belief, the Union is a labor organization within the meaning of 29 U.S.C. 152(5).

3. The Union is found, does, and transacts business in the District of Maryland. The duly authorized officers and agents of the Union are engaged in representing and acting for the employee members of the Union in the District of Maryland.

4. This court has jurisdiction over this action pursuant to Section 301 of the Taft-Hartley Act, 29 U.S.C. 185.

5. Venue is appropriate in this court as the Court has personal jurisdiction over each of the parties.

## FACTS COMMON TO ALL COUNTS

6. Mr. Vanderpool was an employee First Transit, Inc.

7. Mr. Vanderpool was also a member of the Union.

8. Mr. Vanderpool's date of hire with Transit was is June 7, 2007.

9. On December 7, 2012, Mr. Vanderpool was involved in an encounter with one of his supervisor, Corey Richardson, which Mr. Vanderpool reported to Mr. Vanderpool's supervisors in the control room, as well as Mr. his shop steward, Flynn Burke.

10. On that same date, Mr. Vanderpool filed an incident report with Transit, as well as a report with the Metropolitan Police Department of Washington, DC.

11. Transit held an investigative meeting on December 10, 2012, which was attended by Transit's General Manager Tonya Hawkins, Transit's Interim Assistant General Manager Robb Howell, Mr. Richardson, Mr. Vanderpool, and the Union's representatives.

12. During the course of the December 10, 2012 meeting, Mr. Richardson alleged that prior to the December 7, 2013 incident, he was involved in another incident with Mr. Vanderpool.

13. Mr. Richardson had not previously reported the prior incident; nor had control center supervisor Erica Zimmerman, who was alleged to have witnessed the prior incident.

14. Upon information and belief, Transit initiated an investigation into the prior incident.

15. Upon information and belief, Transit terminated Mr. Richardson for failing to report the prior incident when it occurred.

16. By letter of December 19, 2012, Transit notified Mr. Vanderpool that his employment was terminated, effective immediately, for his conduct during the prior incident.

17. Upon information and belief, Transit and the Union were parties to a collective bargaining agreement ("CBA") that was effective from April 1, 2012 through March 31, 2016.

18. The CBA contained the following provisions.

### ARTICLE 9 - EMPLOYEE DISCIPLINE

A. The Company will not discipline an operator without just cause; however, nothing shall prevent the Company from removing an operator from service while it conducts an investigation. Such investigation will be completed before discipline is issued. Discipline shall be issued within fourteen (14) calendar days of the Company's knowledge of the alleged misconduct or infraction. The Company will furnish the Union with a copy of all actions outlined above.

B. The Company recognizes the concept of progressive discipline; however, the Company and the Union agree that some misconduct/infractions warrant bypassing the progressive discipline steps and may subject the operator to suspension or termination on the first offense.

\* \* \* \*

### ARTICLE 10 - GRIEVANCE AND ARBITRATION

A. For the purpose of this Agreement, a grievance is defined as a dispute between the parties concerning the meaning, interpretation, application or alleged violation by the Company of the express terms of this Agreement.

B.  Grievances meeting the above definition shall be processed in the following manner:

STEP ONE - Grievances must be submitted in writing to the Assistant General Manager or designee, no later than ten (10) calendar days after the employee knew or should have known of the event, occurrence or nonoccurrence giving rise to the grievance. The grievance shall be in such detail as to identify the nature of the grievance, the date of the alleged grievance, and the provision or provisions of the Agreement violated by the Company. The Assistant General Manager or designee, shall schedule a meeting, if requested by the Union, within ten (10) calendar days after receipt of the written grievance with the employee and the appropriate Union representative designated by the Union to handle the grievance. The Assistant General Manager or designee shall respond to the Union representative in writing as to his or her decision regarding the Grievance within ten (10) calendar days after receipt of the grievance by the Assistant General Manager or designee, or in the case of a meeting, within ten (10) calendar days following the date of the meeting.

STEP TWO - In the event the grievance is not resolved to the satisfaction of the employee in STEP ONE, above, the Union may submit the grievance to the General Manager, or designee, within ten (10) calendar days following the date of the Company's answer in STEP ONE. The General Manager, or designee, and the Union representative shall hold a meeting, if requested by the Union, within ten (10) calendar days of the date the Grievance is appealed to STEP TWO, to discuss the grievance. The General Manager, or designee, shall respond to the Union in writing as to his or her decision regarding the Grievance within ten (10) calendar days after receipt of the grievance by the General Manager, or designee, or in the case of a meeting, within ten (10) calendar days following the date of the meeting.

STEP THREE - In the event the grievance is not resolved in STEP TWO, the Union may refer the Grievance to arbitration by written notice to the General Manager within 30 calendar days following the date of the General Manager's response in STEP TWO.

C.  After a demand for arbitration has been made, within ten (10) calendar days the Union shall submit a request to the Federal Mediation and Conciliation Service (FMCS) for a list of seven (7) names of impartial Arbitrators in the region nearest to the Company's premises. The Company and the Union shall, within ten (10) calendar days following receipt of the list of Arbitrators from FMCS, alternately strike names from the list until only one (1) name remains, with the order of striking to be determined by coin toss. The remaining Arbitrator shall act as the Impartial Arbitrator who shall hear and decide the issue. Either party may request one time a new list of arbitrators at their cost.

D. It is understood that the Arbitrator shall be without authority or jurisdiction to add to, remove from, alter, or otherwise amend in any way any provision of this Agreement. The jurisdiction and authority of the Arbitrator shall be for the determination of such grievance, expressly limited to the interpretation, application and compliance with the provisions of this Agreement and supplements or appendices hereto, relating to the rates of pay, hours or other conditions of work, as set forth in the Agreement.

* * *

G. It is the intent of the parties that the time limits provided for shall be strictly adhered to. Exceptions to the foregoing time limits shall be made only upon mutual written agreement of the parties. Failure to comply with the time limits herein shall result in forfeiture of the failing party's position without setting precedent. If a time limit expires on a Saturday, Sunday, or holiday, the final day shall be the next business day.

19. On December 27, 2012, the Union filed a grievance on behalf of Mr. Vanderpool.

20. Upon information and belief, on January 3, 2013, at Step 1 of the contractual grievance procedure, Transit denied the grievance.

21. Upon information and belief, on January 28, 2013, at Step 2 of the contractual grievance procedure, the Union denied the grievance.

22. The Union agreed to arbitrate the grievance

23. Upon information and belief, the Union failed to file a written request for arbitration.

24. On March 20, 2014, an arbitration of the grievance was conducted.

25. On May 16, 2014, the arbitrator concluded that the Union failed to satisfy the procedural requirement to submit a written request for arbitration and such procedural requirement had not been waived by Transit.

26. The arbitrator dismissed the grievance as being not procedurally arbitrable.

## COUNT ONE
### (Breach of Duty of Fair Representation)

27. Mr. Vanderpool incorporates each of the foregoing paragraphs as if fully set forth herein.

28. The Union breached its duty of fair representation by failing to timely file a written demand for arbitration.

29. Had the Union timely filed the written demand for arbitration, Mr. Vanderpool would have prevailed in arbitration.

30. As a result of the Union's breach of its duty of fair representation, Mr. Vanderpool has suffered damage in that he was unable to recover his lost wages and have his employment reinstated.

31. In addition, Mr. Vanderpool has suffered inconvenience, emotional distress, loss of enjoyment of life and other harm. He has also had to initiate this litigation to secure his relief and vindicate his rights.

WHEREFORE, Mr. Vanderpool respectfully requests this Court to: enter a judgment in favor of Mr. Vanderpool against the Union in an amount in excess of $60,000 in compensatory damages; enter an order directing the Union to pay all reasonable attorney's fees and costs he has incurred in securing this relief; enter an order providing such other and further relief as the Court deems just and equitable.

Respectfully submitted,

*[signature]*

Thomas O'Toole, Trial Bar 10227
Baroody & O'Toole
201 North Charles Street, Suite 2102
Baltimore, Maryland 21201
(410) 539-8413 (telephone)
totoolelaw@aol.com (email)
(410) 539-8411 (facsimile)

Attorneys for Plaintiff

## REQUEST FOR JURY TRIAL

Mr. Vanderpool, by and through his undersigned counsel, requests a jury trial in this matter.

*[signature]*

Thomas O'Toole, Trial Bar 10227